UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVONTA B. GRAHAM, | No. 2:19-cv-1485-KJM-EFB P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| TAMMY FOSS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for second-degree murder and robbery with various enhancements. ECF No. 1 at 1. Petitioner alleges that the trial court violated his constitutional rights when it (1) admitted a hearsay statement made by a co-defendant and (2) failed to advise petitioner of certain rights when it took his admission of a prior conviction. *Id.* at 5, 11.

It is undisputed that the first claim has not been presented to the California Supreme Court. On March 5, 2021, the court ordered the parties to submit supplemental briefing on the issue of whether the case should be stayed pending petitioner's exhaustion of his first claim. ECF No. 28. The briefing has been received by the court (petitioner opted not to submit a reply brief). ECF Nos. 29, 30. For the reasons that follow, the court should decline to stay the case and deny the petition.

1

### I. Background

Petitioner was convicted on September 16, 2016 following a jury trial. ECF No. 1 at 1. The conviction was affirmed on appeal on April 23, 2018. *Id.* at 2. The California Supreme Court denied review on July 25, 2018. *Id.* Petitioner has not filed any other post-conviction cases to attack the conviction or sentence, leaving the appellate court's opinion as the last reasoned state court opinion on his case. The facts, as relayed by the California Court of Appeal[1], are:

> **The Robbery**
>
> Around 5:00 p.m. on December 15, 2014, three African-American males entered the Baidu Foot and Body Massage Parlor and robbed two female employees at gunpoint. The men took personal property and cash from the employees. They also took, among other things, a bag from the store containing store receipts and around $3,000 to $5,000 in cash. During the robbery, both females were pistol-whipped and physically assaulted. One of the men also threatened to kill the employees.
>
> When images from surveillance video were circulated to local law enforcement agencies, defendant and Daquan Javon Cooper were identified as two of the perpetrators. Defendant was identified as the individual wearing the striped shirt. The video surveillance showed, among other things, defendant holding a revolver during the robbery and walking away from the massage parlor carrying a black bag.
>
> At trial, defendant testified on his own behalf while his codefendants, Cooper and Ira Swanson, exercised their constitutional right to remain silent. When defendant testified, he admitted that he participated in the robbery. He explained that he and four other men drove to the massage parlor in a Ford Expedition. The driver of the vehicle, Cornelius Huston, and Jemahl Loharsingh stayed in the vehicle, while defendant, Cooper, and Swanson went inside. Defendant admitted that he had a revolver and was wearing a striped shirt during the robbery. He also admitted that he struck one of the female employees with his revolver.
>
> **The Murder**
>
> In December 2014, Yolanda Sanders lived on the second floor of an apartment complex on Bell Street. On the evening of December 15, she was on her balcony smoking a cigarette when she saw a Ford Expedition park in a neighboring apartment complex and four African-American males get out of the vehicle. Around five minutes later, the man wearing the striped shirt started arguing with one of the other men. The man in the striped shirt yelled, "F- you, nigga," and then raised his arm, stepped backwards, and fired four to five gunshots. Sanders

---

[1] The facts recited by the state appellate court are presumed to be correct where, as here, the petitioner has not rebutted the facts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (as amended).

yelled, "Stop that guy right there. He just shot that boy." The shooter looked up at Sanders before calmly walking away and entering a downstairs apartment.

At 5:09 p.m., the police received a report of a shooting at 2306 Church Avenue. An officer responding to the robbery heard radio traffic indicating that the shooting occurred near the intersection of Church Avenue and Bell Street. When an officer arrived at the scene of the shooting (i.e., 2312 Church Avenue), she checked the victim, later identified as Loharsingh, and found that he had an erratic pulse but was nonresponsive. Loharsingh was pronounced dead at the scene at 5:23 p.m.

An autopsy revealed that Loharsingh had been shot five times. A search of his pockets revealed, among other things, receipts from the massage parlor and $742 in cash. Forensic testing on the recovered bullets indicated that they came from the same gun, which was likely a revolver. The bullets were determined to be consistent with .38-caliber ammunition.

During a search at the apartment complex where the shooting occurred, police found a .32-caliber Taurus revolver inside a grill on the front porch of apartment No. 2. The revolver was fully loaded with five .38-caliber rounds. A black bag was found near the front door of the apartment. It contained ammunition, including a box of .38-caliber ammunition. Various items were also found inside apartment No. 2, including receipts from the massage parlor.

On the night after the shooting, Swanson, who had been friends with Loharsingh for years, went to Loharsingh's mother's residence. When he arrived, numerous people were inside, including Loharsingh's mother, Dionne Wilson, and Monique Carson, the mother of Loharsingh's children. Swanson told Wilson and Carson as well as about five other people that he, defendant, and Huston robbed a "spa" while Loharsingh was asleep in the car. He explained that they split up the money after the robbery. Shortly thereafter, defendant and Loharsingh got into an argument about the division of the money. During the argument, defendant pulled out a gun and shot Loharsingh five times. Swanson explained that defendant shot Loharsingh after Loharsingh set his gun down and indicated he wanted to fight defendant.

When defendant testified about the shooting, he explained that Huston drove to the apartment complex after the robbery. He further explained that he divided the money from the robbery equally, and that, as he was walking away from the other men, he heard multiple gunshots and took off running. Defendant claimed that he did not see who shot Loharsingh. He also claimed that he saw Swanson carrying the black bag found by detectives following the shooting.

*People v. Graham*, No. C083076, 2018 Cal. App. Unpub. LEXIS 2720, at *2-6 (Apr. 23, 2018).

## II. Analysis

### A. Petitioner's First Claim Must Be Dismissed as Unexhausted

A district court may not grant a petition for a writ of habeas corpus unless the petitioner has exhausted available state court remedies. 28 U.S.C. § 2254(b)(1). A state will not be deemed

/////

3

to have waived the exhaustion requirement unless the state, through counsel, expressly waives the requirement. 28 U.S.C. § 2254(b)(3).

Exhaustion of state remedies requires that petitioners fairly present federal claims to the highest state court, either on direct appeal or through state collateral proceedings, in order to give the highest state court "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (some internal quotations omitted). "[A] state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law." *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended by 247 F.3d 904 (9th Cir. 2000). "[T]he petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is self-evident . . . ." *Id*. (citations omitted); *see also Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) ("[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."); *Duncan*, 513 U.S. at 365-66 (to exhaust a claim, a state court "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").

In addition to identifying the federal basis of his claims in the state court, the petitioner must also fairly present the factual basis of the claim in order to exhaust it. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Robinson v. Schriro*, 595 F.3d 1086, 1101 (9th Cir. 2010). "[T]he petitioner must . . . provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'" *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)).

Where a federal habeas petitioner has failed to exhaust a claim in the state courts according to these principles, he may ask the federal court to stay its consideration of his petition while he returns to state court to complete exhaustion. Two procedures may be used in staying a petition — one provided for by *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002) and the other by *Rhines v. Weber*, 544 U.S. 269 (2005). *King v. Ryan*, 564 F.3d 1133, 1138-41 (9th Cir. 2009).

Under the *Kelly* procedure, the district court may stay a petition containing only exhausted claims and hold it in abeyance pending exhaustion of additional claims which may then be added to the petition through amendment. *Kelly*, 315 F.3d at 1070-71; *King*, 564 F.3d at 1135. If the federal petition contains both exhausted and unexhausted claims (a so-called "mixed" petition), a petitioner seeking a stay under *Kelly* must first dismiss the unexhausted claims from the petition and seek to add them back in through amendment after exhausting them in state court. *King*, 564 F.3d at 1138-39. The previously unexhausted claims, once exhausted, must be added back into the federal petition within the statute of limitations provided for by 28 U.S.C. § 2244(d)(1), however. *King*, 564 F.3d at 1140-41. Under that statute, a one-year limitation period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review or the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2241(d)(1). A federal habeas petition does not toll the limitations period under 28 U.S.C. § 2244(d)(2). *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

Under *Rhines*, a district court may stay a mixed petition in its entirety, without requiring dismissal of the unexhausted claims, while the petitioner attempts to exhaust them in state court. *King*, 564 F.3d at 1139-40. Unlike the *Kelly* procedure, however, *Rhines* requires that the petitioner show good cause for failing to exhaust the claims in state court prior to filing the federal petition. *Rhines*, 544 U.S. at 277-78; *King*, 564 F.3d at 1139. In addition, a stay pursuant to *Rhines* is inappropriate where the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id*.

*Rhines* did not describe the criteria for determining whether good cause for failure to exhaust exists. The U.S. Court of Appeals for the Ninth Circuit has found that good cause does not require a showing of "extraordinary circumstances." *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). A petitioner shows good cause by providing the court with a reasonable excuse, supported by evidence, that justifies the failure to exhaust. *Blake v. Baker*, 745 F.3d 977, 982

5

(9th Cir. 2014). *See also Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) ("A petitioner's reasonable confusion . . . will ordinarily constitute 'good cause' [under *Rhines*]. . . ."); *Dixon v. Baker*, 847 F.3d 714, 721-22 (9th Cir. 2014) (lack of counsel in state post-conviction proceedings constitutes good cause under *Rhines*).

Petitioner's supplemental brief consists of a bare request for a stay without any supporting showing of cause. ECF No. 29. Respondent's brief argues: (1) it was improper of the court to inquire into the possible propriety of a stay; (2) petitioner has failed to show good cause under *Rhines*; (3) petitioner's unexhausted claim is plainly meritless; (4) petitioner has engaged in dilatory litigation tactics; and (5) it would be futile to stay the case under *Kelly* because the limitations period has elapsed. ECF No. 30.

The court agrees that petitioner has not made, and has not attempted to make, any showing of good cause to stay the case. He provides no explanation in his supplemental brief for why he did not exhaust the claim prior to filing this case. His amended petition explains only that he is developmentally disabled and relied on a jailhouse lawyer who failed to state cognizable federal claims in the petition. ECF No. 23 at 5. (Respondent challenged petitioner's original petition in this action as failing to state a federal claim; petitioner then amended the petition.) Beyond simply stating that petitioner has some disability, the extent of which is not described, this explanation does not touch on why the claim was not exhausted before the federal petition was filed. While some showing of petitioner's disability may have sufficed to provide good cause, he has not described that disability or submitted any supporting evidence. Accordingly, he has not shown good cause and a stay pursuant to *Rhines* is inappropriate.

The court also agrees that a stay under *Kelly* would be futile, as the unexhausted claim does not relate back to the filing of the original petition and the limitations period ended on October 23, 2019. Petitioner's direct petition for review to the California Supreme Court was denied on July 26, 2018. ECF No. 18-4 at 2. Petitioner had 90 days from that date to seek certiorari with the U.S. Supreme Court, and one year from the expiration of that date (October 24, 2018) to file his federal petition. U.S. S. Ct. Rule 13; 28 U.S.C. § 2244(d)(1). In the original petition, which was filed within that limitations period, petitioner challenged a hearsay ruling by

the trial court that allowed statements made by co-defendant Swanson to witnesses Monique Carson and Dionne Wilson to be heard by the jury. ECF No. 1 at 10. The unexhausted claim, introduced in the amended petition on June 8, 2020, challenges the introduction of a taped statement Swanson made to police detective Lauren Becwar. ECF No. 23 at 8-9. This new claim "relates back" to the original petition, and thus may take advantage of its timely filing date, only if it shares a common core of operative facts. Fed. R. Civ. P. 15(c)(1)(B); *Mayle v. Felix*, 545 U.S. 644, 649-50 (2005). However, the facts undergirding the two claims differ "in time and type" – Swanson's spontaneous statements to Wilson and Carson occurred at a different time from his taped statement to Detective Becwar and the admissibility of the former statements was considered discretely prior to trial. *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013) ("time and type" refers to the facts supporting claims for relief, not the legal grounds supporting those claims), abrogated on other grounds by *Davila v. Davis*, __ U.S. __, 137 S. Ct. 2058 (2017). Because the claim does not relate back to the original filing date, if the court were to stay the case pending its exhaustion, it would be untimely whenever exhaustion were completed. As a stay under *Kelly* would be futile for this reason, and petitioner has not presented good cause for a stay under *Rhines*, the court should dismiss the unexhausted claim without prejudice rather than stay the case.[2]

/////

/////

---

[2] The court rejects respondent's assertion that it was error for the court to raise the issue of staying the case. Respondent relies on *United States v. Sineneng-Smith*, __ U.S. __, 140 S. Ct. 1575 (2020), in which a unanimous Supreme Court held that the Ninth Circuit had deviated too far from the principle of party presentation when it decided a case based on arguments raised not by the parties, but instead by amici. Contrary to respondent's position, the Court did not hold that it is always inappropriate for a court to raise an issue that has not been presented by the parties. *Id.* at 1579 ("The party presentation principle is supple, not ironclad. There are no doubt circumstances in which a modest initiating role for a court is appropriate."). In the Ninth Circuit currently, and until a higher court rules otherwise, the issue of whether to stay an unexhausted habeas claim is one of those circumstances in which a court may take an initiating role. *Robbins v. Carey*, 481 F.3d 1143, 1147-49 (9th Cir. 2007) (district courts are not required to sua sponte raise the issue of staying an unexhausted habeas claim, but it is within their discretion to do so if they "inform both parties . . . to enable them to provide the information the court needs to exercise its discretion over whether to stay and abey the petition.").

### B. Petitioner's Remaining Claim Is Without Merit

In his second, and last remaining claim, petitioner argues that he "was never advised of his right to remain silent and to confront witnesses under the Fifth, Sixth, and Fourteenth Amendments" by the trial court when it accepted his admission of a prior conviction. ECF No. 23 at 11.

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

The state appellate court found that the trial court had erroneously failed to advise petitioner of his state-law rights to remain silent and confront adverse witnesses prior to accepting his admission of a prior conviction, but that the admission was nonetheless voluntary and intelligent. *People v. Graham*, No. C083076, 2018 Cal. App. Unpub. LEXIS 2720, at *14-21 (Apr. 23, 2018). This court cannot disturb that ruling, as it was concerned solely with state law. *People v. Mosby*, 33 Cal. 4th 353, 360 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (there is no federal constitutional right to a jury trial as to the fact of a prior conviction); *see, e.g., Johnson v. Pfeiffer*, No. 2:17-cv-01635-JKS, 2019 U.S. Dist. LEXIS 191211, at *30 (E.D. Cal. Nov. 4, 2019) ("Because Johnson did not have a federal right to a jury trial on the prison prior allegations, he is not entitled to federal habeas relief on the trial court's failure to advise him of his rights to remain silent and cross-examine witnesses. Such claim presents only a state law issue, and this Court is bound by the Court of Appeals' determination that Johnson's admission was knowing and voluntary."). Accordingly, the court must deny petitioner's request for federal habeas relief.

/////
/////
/////
/////

### III. Recommendation

For the reasons stated above, it is hereby RECOMMENDED that the petition be DENIED and the Clerk be directed to CLOSE the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: June 14, 2021.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE